IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| WILBERT FLORES PEREZ, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:26-cv-770-ECM |
| | ) | [WO] |
| BILL FRANKLIN, *et al.*, | ) | |
| | ) | |
| Respondents. | ) | |

**MEMORANDUM OPINION and ORDER**

## I. INTRODUCTION

On October 2, 2026, Petitioner Wilbert Flores Perez filed a counseled petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (doc. 1), and a motion for a temporary restraining order and preliminary injunction (doc. 3). That same day, the Court: (1) denied the Petitioner's motion for a temporary restraining order on procedural grounds; (2) ordered responses to the petition and motion for a preliminary injunction; (3) ordered jurisdictional briefing from all parties; and (4) set a hearing for October 8, 2026. (Doc. 5). The Court held a hearing on October 8, 2026, and afterwards received further briefing on jurisdiction. (Docs. 10, 15). For the reasons stated on the record at the hearing, and for those that follow, this case is due to be DISMISSED for lack of jurisdiction.

## II. BACKGROUND

The Petitioner "is a forty-six-year-old native and citizen of Mexico," who lives in the United States with his family. (Doc. 1 at 1, para.1). "On October 1, 2026, the Elmore County Sheriff's Office booked [the Petitioner] into the Elmore County Jail on a single

misdemeanor charge: domestic violence in the third degree (harassment), Ala. Code § 13A-6-132." (*Id.* at 2, para. 2). At the time of filing his habeas petition and at present, the Petitioner is confined in the Elmore County Jail on that charge with bond set at $6,000. (*Id.* at 2, para. 2). The Petitioner's bond for the state charge was not posted at the time of filing, (*see id.* at 2, para. 3), nor had it been posted at the time of the October 8, 2026 hearing. For purposes of this case, the "Petitioner does not challenge the state charge, the State's authority to prosecute it, or the bond the State set." (Doc. 6 at 3, para. 9).

"On October 2, 2026, the Elmore County Sheriff's Office confirmed to [Petitioner's] counsel that it has notified U.S. Immigration and Customs Enforcement ('ICE') of [the] Petitioner's custody, that he is being held for ICE pickup [pursuant to a detainer], and that ICE has not said when it will come."[1] (Doc. 1 at 2, para. 3; *see also* doc. 7-5 (ICE Detainer)). As of the October 8, 2026 hearing, there had been no indication when ICE may take physical custody of the Petitioner. Due to the ICE detainer, the Petitioner alleges that he "cannot obtain release on this $6,000 bond set on his state charge" because even if the bond was posted, Elmore County officials say he "can leave [the jail] only in ICE's custody." (Doc. 1 at 3–4, paras. 8–9; doc. 6 at 2, paras. 2–4). Thus, by remaining at the Elmore County Jail, the Petitioner asserts that he is "in custody by color of federal authority, because the ICE hold, not the state charge is what keeps him confined." (Doc. 6 at 4, para. 12).

[1] An ICE detainer is a request to another law enforcement agency for notification prior to release of an alien presently in the custody of that agency because ICE seeks physical custody of the alien to arrest and remove them from the United States. *Roberts v. INS*, 372 Fed. Appx. 921, 924 n.5 (11th Cir. 2010) (quoting 8 C.F.R. § 287.7(a)).

On October 2, 2026, the Petitioner filed this action. (Doc. 1). As relief, the Petitioner seeks, *inter alia*, a writ of habeas corpus to release him or, in the alternative, an individualized bond hearing before an immigration judge within forty-eight hours of the Court's order. (*Id.* at 19).

On October 6, 2026, the Federal Respondents[2] responded to the petition, asserting that (1) the petition should be dismissed for lack of jurisdiction; and (2) in any event, the "Petitioner cannot succeed on the merits in this case, nor can he show that he will suffer irreparable injury without an injunction."[3] (Doc. 7 at 5–10). The Federal Respondents attached several exhibits to their response, including an unsigned warrant for arrest and a document that appears to be a final removal order for the Petitioner from September 2014. (*See* docs. 7-2, 7-3, 7-6). Indeed, according to a declaration from Assistant Field Office Director Francisco J. Ayla, the Petitioner was removed to Mexico on September 16, 2014, pursuant to a final removal order:

> On or about September 15, 2014, Petitioner was encountered by United States Border Patrol ("USBP") in the Rio Grande Valley area of Texas after he unlawfully entered the United States from Mexico. He was arrested, and during this time, he admitted to the unlawful entry and to not having any legal documents to enter, pass through, or remain in the United States. USBP determined Petitioner was inadmissible to the United States pursuant to section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA") and processed him for expedited removal pursuant to section 235(b)(1)(A)(i) of the INA.

[2] The Federal Respondents are: Brian Acuna, Acting Field Office Director of the New Orleans ICE Field Office; David Venturella, Acting Director of ICE; Markwayne Mullin, Secretary of the United States Department of Homeland Security; and Todd Blanche, United States Attorney General.

[3] Respondent Bill Franklin, the Sheriff of Elmore County, made a "limited appearance" "to monitor this case to ensure all appropriate actions affecting [him] are taken." (Doc. 16 at 1). Despite the Court sending the petition, the motion for a temporary restraining order, and the Court's October 2, 2026 Order to Respondent Franklin, (doc. 13), he has made no other filings.

. . .

> The next day, September 16, 2014, USBP removed Petitioner to Mexico via the Brownsville Gateway Pedestrian Bridge in Texas.

(Doc. 7-1 at 1, paras. 4–5).

That account contradicts the allegation in the petition stating that the Petitioner "entered the United States on or about 2003, without inspection, and has lived here ever since, for more than twenty-three years." (Doc. 1 at 7, para. 24). Counsel for the Petitioner acknowledged this discrepancy in post-hearing jurisdictional briefing:

> Paragraph 24 of the Petition, which undersigned counsel verified on information and belief under 28 U.S.C. § 2242, states that Petitioner entered the United States in approximately 2003 and has resided here continuously since. Counsel did not have access to [United States Department of Homeland Security ("DHS")] records when the Petition was verified. The Government's records reflect an expedited removal order dated September 16, 2014, and removal the same day. Docs. 7-2, 7-3. Counsel corrects paragraph 24 to reflect those records and will file a corrected verification if the Court so directs. This correction is not an admission by Petitioner regarding the circumstances of any entry.

(Doc. 10 at 7).[4]

The Federal Respondents continue to maintain that the Court lacks jurisdiction over this matter. (*See* doc. 15).

## III. ANALYSIS

"Federal courts are courts of limited jurisdiction" and only possess "that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511

[4] Of course, while the Petitioner's counsel may not have had access to the DHS documents, the information contained in those documents would arguably be known by the Petitioner. Moreover, the Petitioner would presumably know whether he was deported from the United States in 2014 or not.

U.S. 375, 377 (1994). Accordingly, "[a]ny time doubt arises as to the existence of federal jurisdiction," the Court must "address the issue before proceeding further." *Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co.*, 68 F.3d 409, 414 (11th Cir. 1995). To that end, the Court begins and ends its analysis with jurisdiction.

Under 28 U.S.C. § 2241(c), "[t]he writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody under or by color of the authority of the United States . . . or . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States . . . ." Importantly, this jurisdictional custody requirement is measured when the petition is filed. *See Spencer v. Kemna*, 523 U.S. 1, 7 (1998). The Court therefore examines its jurisdiction as of the petition's filing on October 2, 2026.

Because the Petitioner challenges his purported federal detention, jurisdiction only attaches if he was in the federal government's custody. In the Petitioner's view, "[w]hat keeps him confined is federal civil immigration authority, and nothing else," (doc. 1 at 2, para. 3), because "Respondent Franklin is holding [him] for ICE . . . 'by color of the authority of the United States,'" (doc. 6 at 5, para. 13(c) (quoting 28 U.S.C. § 2241(C)(1)). However, at the time of filing his petition, the Petitioner (1) had not posted bond and (2) was therefore in state custody for a state criminal charge. Moreover, "[t]he filing of the detainer, standing alone, did not cause [him] to come within the custody" of ICE. *Orozco v. U.S. I.N.S.*, 911 F.2d 539, 541 (11th Cir. 1990) (per curiam), *superseded by statute on other grounds*. This point of law is widely recognized within the Eleventh Circuit. *See, e.g.*, *Louis v. Sec'y, Fla. Dep't of Corr.*, 524 F. App'x 583, 584 (11th Cir. 2013) ("An ICE detainer, standing alone, is generally insufficient to establish ICE custody" (citing *Orozco*,

911 F.2d at 541)); *Chavez Andablo v. Warden, Polk Cnty. Jail*, 2026 WL 1875538, at *1 (M.D. Fla. June 30, 2026) ("Because Chavez Andablo is not 'in custody' under the challenged detainer, the district court lacks jurisdiction under Section 2241 to review the constitutionality of his detention"); *Morales v. United States Dep't of Homeland Sec. Immigr. & Customs Enf't*, 2026 WL 1493619, at *1 (M.D. Ala. May 28, 2026) ("However, the mere lodging of a DHS detainer does not by itself cause a petitioner to come within DHS's custody for purposes of § 2241").[5]

The Petitioner, however, says there is more to the story. At the hearing and in jurisdictional briefing afterwards, the Petitioner contends that the final removal order from September 2014 means the Court has jurisdiction. (Doc. 10 at 2, 4–5). Specifically, the Petitioner argues that: (1) the 2014 final removal order has not expired and may be subject to reinstatement under 8 U.S.C. § 1231, thereby becoming enforceable (*id.* at 6–7); (2) although the "Eleventh Circuit has held that the filing of a detainer, 'standing alone,' does not bring a person within immigration custody," the Circuit "did not address [the sufficiency of] a detainer accompanied by final order of removal" (*id.* at 2 (quoting *Orozco*, 911 F.2d at 541)); and (3) courts that have addressed whether a detainer coupled with a final order of removal is sufficient have held "that the combination satisfies § 2241" (*id.* at 2–3).[6]

---

[5] The Court here, and elsewhere in this Opinion, cites to nonbinding authority. While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

[6] For context, "[f]ederal immigration law contains various provisions authorizing the Government to detain aliens during the removal process. This case concerns two of them: 8 U.S.C. § 1226 and 8 U.S.C. § 1231." *Johnson v. Guzman Chavez*, 594 U.S. 523, 526 (2021). "Section 1226 applies before an alien proceeds through the removal proceedings and obtains a decision; § 1231 applies after. Once an alien has been

Section 1231 provides that where "the Attorney General *finds* that" a person "has reentered the United States illegally after having been removed," "the prior order of removal is reinstated from its original date," and the person "shall be removed under the prior order at any time after the reentry." 8 U.S.C. § 1231(a)(5) (emphasis added). "The language of the statute does not clearly set forth who is authorized to reinstate the prior deportation order. However, the regulation implementing the statute mandates that an 'immigration officer shall determine' whether an alien is subject to having his prior deportation order reinstated." *Matter of WCB*, 24 I. & N. Dec. 118, 120 (BIA 2007) (quoting 8 C.F.R. § 1241.8(a) (2006)); *see* 8 C.F.R. § 1241.8(a)–(b) (2026) (stating the same and providing that the immigration officer "shall provide the alien with written notice of his or her determination"). "In short," DHS regulations provide that "the agency obtains the alien's prior order of removal, confirms the alien's identity, determines whether the alien's reentry was unauthorized, provides the alien with written notice of its determination, allows the alien to contest that determination, and then reinstates the [prior removal] order." *Johnson v. Guzman Chavez*, 594 U.S. 523, 530 (2021).

---

ordered removed from the United States in a removal proceeding under [8 U.S.C.] § 1229a and that order has been reinstated under [8 U.S.C.] § 1231(a)(5), 'the alien cannot go back in time, so to speak, to § 1226.'" *Id.* at 544 (quoting *Guzman Chavez v. Hott*, 940 F.3d 867, 888 (4th Cir. 2019) (Richardson, J. dissenting)). That distinction matters because if an alien is detained under § 1226, then he "may receive a bond hearing before an immigration judge," and if detained under § 1231, "then the alien is not entitled to a bond hearing." *Id.* at 526.

So, on the one hand, the Petitioner's argument regarding the 2014 removal order bolsters his jurisdictional argument. On the other hand, it complicates the Petitioner's request for an individualized bond hearing because he is not entitled to such if he is subject to removal pursuant to the purported 2014 removal order. *See* 8 U.S.C. § 1231(a)(5). Apparently recognizing this hazard, the Petitioner corrected Paragraph 24 of his petition but did not "concede any fact concerning the circumstances or date of any entry, that DHS has reinstated or may lawfully reinstate the 2014 order, or that his detention is or would be governed by 8 U.S.C. § 1231 rather than § 1226." (Doc. 10 at 7).

There is a split of authority as to whether a federal immigration detainer coupled with a final order of removal is equivalent to federal custody for § 2241 habeas corpus purposes. *See Richards v. Holder*, 2011 WL 1302263, at *2 (D. Minn. Apr. 6, 2011) (discussing the split between the Eighth and Fifth Circuits with the Second, Sixth, Ninth, and Tenth Circuits). But, for today's purposes, the Court does not address this split and instead rests its decision on a narrower ground—that, on this record, the Attorney General (or his designee) has yet to make the requisite finding under § 1231(a)(5) that the Petitioner "has reentered the United States illegally after having been removed . . . under an order of removal" and to serve the Petitioner with notice of that determination. (*See* doc. 15 at 4 ("[W]hether ICE will seek to have [the] Petitioner's prior removal order reinstated under § 1231 is yet to be determined since he is not in actual ICE custody")). Without such a finding, the plain language of § 1231 indicates that the Petitioner's 2014 removal order has not been reinstated. As such, at the time of filing, the Petitioner only had an ICE detainer. That detainer alone is insufficient to bring the Petitioner within the custody of the federal government and the Court's § 2241 habeas jurisdiction.[7] *See Orozco*, 911 F.2d at 541.

## IV. CONCLUSION

Accordingly, the Court lacks jurisdiction, and it is ORDERED as follows:

1. This case is DISMISSED without prejudice for lack of jurisdiction.

2. All pending motions are DENIED as moot.

[7] To the extent that the Petitioner points to the arrest warrant document, (doc. 7-6), as a basis for a finding of federal detention, that document is not signed. And, at the hearing, the Government represented that the document did not appear to be active since it is unsigned.

3. All pending hearings and deadlines are TERMINATED.

4. The Clerk of the Court is DIRECTED to close this case.

DONE this 16th day of October, 2026.

/s/ Emily C. Marks
EMILY C. MARKS
UNITED STATES DISTRICT JUDGE